## SANDERS & FENWICK v. RIVES.

1. If the condition of a bond for a writ of error, substantially conforms to the requisitions of the statute, it is sufficient, though the language be different, and the duties minutely detailed.
2. *Semble,* that where a statutory bond contains the conditions prescribed by the statute, and also others superadded, the bond shall be good as far as warranted by the statute, and void for the surplus.
3. Where a judgment is reversed, and a corrected judgment is rendered in the appellate Court, the sureties in the error bond are liable for the amount of such corrected judgment.
4. It will not be adjudged a variance between a *sci. fa.* and a record, that the record does not shew the amount of costs recovered, as averred in the *sci. fa.* The allegation in the *sci. fa.* may be proved at the trial by the fee bill.
5. The damages given on the affirmance of a judgment in the Circuit and Supreme Courts, bear interest till paid.
6. Where the sheriff gives an official receipt to the defendant, it is good evidence of payment, though he fail to make return of it, and although a writ of error be sued out before the amount is paid over to the plaintiff.
7. But where, pending a writ of error, money is deposited with the sheriff who holds an execution, to be applied to the satisfaction of a judgment in case of affirmance, it is not a payment, it is at the risk of the payor.

THIS was an action of *scire facias* tried in the Circuit Court of Madison county, in which F. E. Rives was plaintiff, and W. Sanders and J. Fenwick were defendants. The *scire facias* recites that at July term 1821 of Madison County Court, Rives recovered a judgment against Walter Otey, W. Lewis, J. Jones, E Jones and F. Jones for $2915 66 debt, $175 63 damages, and $47 62 costs; that on the 12th day of —— 1822, W. Otey and W. Lewis, sued out a writ of error to Madison Circuit Court, "and entered into bond with securities &c. according to the statute;" that at the February term 1823, of Madison Circuit Court, the judgment of the County Court was affirmed with damages and costs; that in July 1823, Otey, one of the said plaintiffs in error, prosecuted a writ of error to the Supreme Court, to reverse the judgment of the Circuit Court, and entered into bond with W. Sanders and J. Fenwick as his sureties, in the penalty of $7172, 62 payable to Rives, conditioned, "that the said Walter Otey should, in case said judgment be affirmed by the said Supreme Court, pay and satisfy the said F. E. Rives the said judgment, damages, interests and costs, and also all moneys and costs due or to become due to him thereon, and also perform and satisfy the sentence, judgment or decree which the said Supreme Court might render in said case;" that in the Supreme Court, the death of W. Otey was suggested, and

John P. Neale and John W. Otey, his administrators, were made parties, and that at July term 1826, the judgment of the Circuit Court was affirmed, and Rives recovered judgment against the administrators of W. Otey for the debt, ten per cent damages, the costs of the Supreme Court, amounting to the sum of $———, and twenty dollars, costs of the writ of error in the Circuit Court; and that neither W. Otey, nor his administrators, nor the defendants Sanders and Fenwick had satisfied said judgment. Wherefore the defendants were called on to shew cause why judgment should not be rendered against them for said several amounts.

The defendant Fenwick, pleaded, 1. Nul tiel record. 2nd. Payment. 3rd. That on the 29th of August 1826, the plaintiff had sued out a fieri facias on the original judgment rendered by the County Court, against the administrators of W. Otey, and against J. Jones, E. Jones F. Jones and W. Lewis, which was in the hands of the Coroner, and in full force when the scire facias was issued. 4th. That the sum of $2393 24, part of the debt, was paid to the Sheriff, before the July term 1823, of the County Court, he having at the time in his hands an execution from said Court, and that the residue was paid before the issuance of the fieri facias. The plaintiff demurred to the third plea, and as to the remainder, there were replications and issues.

The defendant Sanders pleaded 1. Nul tiel record; and 2nd. That after the affirmance of the judgment in the Supreme Court, a fieri facias had been issued on the original judgment against the administrators of Otey, and that it was in the hands of the Coroner and in full force, when the scire facias issued. Issue was joined on the first plea, and the plaintiff demurred to the second plea.

At the April term 1827, the demurrers of the plaintiff to the pleas of the defendants were sustained, and the plaintiff obtained leave to amend his scire facias. At the April term 1828, on the production of the record, the issues on the plea of nul tiel record were determined in favor of the plaintiff.

At the November term 1828, a trial was had on the issues on the plea of payment. On the trial, Fenwick produced in evidence to the jury a fieri facias issued from the County Court, on the first of March 1823, on the original judgment, including the damages of affirmance in the Circuit Court, and made returnable to the July term. This execution had been delivered on the same day it issued to

William Sanders, who was proved to be the lawful deputy of the sheriff, who indorsed on it the date of its reception, and returned it with this further indorsement, "taken up by writ of error." There appeared no other return on it. Fenwick then produced two receipts, signed by S. Peete, attorney for the plaintiff, for partial payments made to him in January 1824. one for $336, and the other for $186 52. To these receipts no objection was made. He produced in evidence two other receipts which were as follows. "Received of Walter Otey $500, in currency, this 8th of April 1823, W. Sanders D. S." on which was a memorandum by Sanders, made, as appeared from inspection, with a different pen and ink, in these words: "The private and individual understanding was between me and captain Otey. that the within receipt was to be applied to an execution which F. E. Rives obtained against said Otey, when the judgment was affirmed in Supreme Court. W. Sanders." The other receipt was in these words, "Received of Walter Otey, $300, Tennessee money, April 12th, 1833, W. Sanders D. S." on which there was an indorsement similar to that on the other receipt. He further gave in evidence two other receipts in the following words: "Received of Walter Otey $500, Tennessee money which is to be applied to an execution F. E. Rives r. Walter Otey &c. April 21, 1823. W. Sanders D. S." "June 2d, 1823, Received of Walter Otey one thousand dollars in Tennessee bank notes, which is to be applied towards the payment of an execution which Francis E. Rives obtained against Walter Otey and William Lewis in the County Court of Madison County, W. Sanders, D. S."

The plaintiff proved by S. Peete, that while the execution was in the hands of the deputy sheriff, Otey had offered to pay to him, the witness and attorney for the plaintiff, about $1000, in Tennessee bank notes, which he refused to receive, because they were then at a discount of 20 or 25 per. cent; that Otey then declared he would pay that money to Sanders; that some time afterwards, Sanders, and he believed Otey also, though not positive as to Otey, informed him that they, Otey and Sanders, had agreed that the payments made by Otey to Sanders on the execution, in currency, should remain in the hands of Sanders until the decision of the Supreme Court, in consequence of Sanders being Otey's security to the bond for the writ of error to that Court. Fenwick then proved by L. Mead the Clerk of the Court, that when Otey applied for the writ of error to the Supreme Court, he, Mead, objected to

the sureties offered, and that Sanders stated in the presence of Otey, that as deputy sheriff he had received between $2300 and $2500 in currency, in part payment of the judgment, that he did not hear of any agreement as to the money remaining with Sanders to abide the writ of error, nor did he know whether Fenwick did or did not know that those payments had been made, before he signed the writ of error bond as surety. There was no evidence to shew that Fenwick knew of the agreement spoken of by Mr. Peete, nor was it shown that any exertions had been made by the plaintiff either by motion or otherwise to obtain from the sheriff the money paid to Sanders; on this proof, which was in substance all that was offered, the plaintiff moved to exclude from the jury the two receipts for $300 and for $500, on which memorandums were indorsed. To this, Fenwick objected, but they were by the Court excluded. The plaintiff then requested the Court to instruct the jury, that if any payment had been made by Otey to Sanders as deputy sheriff, while he held the execution, and if the money so paid still was in the hands of Sanders when the writ of error was taken, and the bond signed, that he the sheriff thenceforward held it as the trustee of Otey, and was not bound, and could not be compelled to pay it to the plaintiff, and that under those circumstances, the jury should not consider it as a payment; which instruction the Court gave. To all which, Fenwick excepted. The jury found that of the judgment rendered in the Circuit Court with fifteen per cent damages, and of the judgment of the Circuit Court affirmed in the Supreme Court with ten per cent damages, with interest on the judgment and on the damages, up to that time, there remained unpaid $5448 23, besides $20 costs expended in the Circuit Court, for which amount judgment was rendered for the plaintiff.

Sanders and Fenwick prosecuted their writ of error to this Court, to reverse this judgment.

HUTCHISON, for the appellants, made the following points: 1. The demurrers to Fenwicks third and to Sanders second pleas should have been overruled; they went to the *scire facias*, and that was bad. It does not name the sureties to the first writ of error bond, nor recite it. It was a part of the record, and being referred to, should have been set forth. The bond on which Fenwick and Sanders are charged, is to be void on the performance of a condition which the law did not require.[a] There is no

a Laws of Ala.
481..2.

averment of non-payment by Lewis, E. Jones, J. Jones, or F. Jones.

2. Those pleas themselves should have been sustained. The right to proceed against the sureties could arise only upon default of the principals. But here the plaintiff was not content to rest till his own test should operate; his execution was out; how could he aver non-payment in his *scire facias?* How many remedies is he to have? Can he proceed against the original defendants, the sureties to the first writ of error, the sheriff and the last sureties, all at once? I presume not.

3. The Court should not have permitted the *scire facias* to be amended. If the demurrers had been allowed to reach it, then it might have been amended; but after that had been refused, and while the plea of *nul tiel record* stood against it, it certainly was irregular to permit the amendment; it changed the issue.

4. The pleas of *nul tiel record* were improperly overruled. The *scire facias* shews a recovery against Frederic Jones, but the record shews one against Fred Jones. The *scire facias* avers an affirmance in the Supreme Court not only for the judgment of the Circuit Court, damages and costs of that Court, and of the Supreme Court, but also for twenty dollars additional costs, which the mandate does not shew in respect to the last item. This is in fact the costs of the copies of records which the Clerk has put in the *scire facias*, but for which no judgment can be shewn.

5. The verdict was excessive, and not consistent with the issues; it includes interest on the damages of affirmance and interest upon interest; the extra judicial $20, are also included; and it does not appear on what pleas it was rendered.[a]

6. The Court erred in excluding the receipts signed by Sanders. They were given officially by the officer who held an execution, to one of the defendants, and the memorandum shews that they were to be applied to the satisfaction of that judgment.[b]

7. The Court erred in the instructions given to the jury. They are not warranted by the law. Fenwick should not in any event, when he believed that $2300 had been paid before he became surety, be made liable for that sum. The injustice of the result is too obvious to require comment.[c]

HOPKINS, argued for the appellee.

HUTCHISON, in conclusion.

*Margin notes:*

JULY 1830.

Sanders and Fenwick v. Rives.

[a] Laws of Ala. 483.

[b] 4 Comyn 237 4 Johns. Ch. R. 254. 9 Johns. R. 327 8 Johns. R. 520, 16, 98. 10 Johns. R. 594. 1 Call, 18. 3 Starkie's Ev 1390 5 Day. 221. 4 Mass. 403. 12 Johns. 207. 15 Johns. 443 3 Haywood 144.

[c] Laws of Ala. 319, 298. Dyer 9. Yelv. 6. Cro. Elis 597. 1 Wash. 118. 1 Mass. 106. 9 Johns. R. 66. Wells 291 17 Johns. R. 34.

By LIPSCOMB, Chief Justice.* In this cause a great many points have been pressed on the consideration of the Court; some of them were abandoned by the counsel in the concluding argument, and there are some others that we should not find material in the investigation; we shall therefore proceed to examine those we consider most prominent, and involving the true grounds of the contest between the parties. The judgment was rendered on a *scire facias* against the plaintiffs in error, as the securities of Walter Otey in a writ of error bond. in a case where Rives, the present defendant was plaintiff, and Otey and others defendants.

The first objection taken by the appellants, is to the writ ·of error bond. It is contended, that it goes beyond what is required by the law, and imposes conditions that had never been contemplated by the obligors. Those con· ditions, it is urged, are not such as the law imposes, and that such being the case, the bond is void. If it were true that those conditions are not such as the law imposes, we should then inquire how far a bond or recognizance containing all the conditions that the law requires, with the addition of others not required, is binding on the parties to it. In such a case, it would seem, that the bond would be valid, so far as the conditions correspond with the law, and that those which are superadded should be treated as surplusage. This rule of construction would do ample justice to all parties; and the maxium *utile per inutile non vitiatur*, would apply. But in point of fact, the bond under consideration does not go beyond the statute; it is true, that it is much more minute and runs more into detail of the conditions to be performed than was at all necessary, yet minutely as those conditions have been set out, the law sub-

stantially requires their performance. The act of 1820, *a* in securing the rights of the judgment creditor, expresses the object to be effected by the bond without descending to particulars; thus when it provides for the payment of such judgment as the Supreme Court may render, in the term judgment, is included the amount of principal, interest, costs and damages; and the special enumeration of those items does not enlarge the duties required to be performed. The act of assembly is in the following words: "That no judgment of the Circuit Court in this State shall be suspended, unless the party applying for such wr t of

---

*Note.* The cause was argued at the last term and retained under ad· visement till the present term.

error shall execute in the Clerk's office a bond with sufficient security, to be approved by the Clerk, conditioned for prosecuting the writ of error to effect, and to pay and satisfy the judgment that shall be rendered in the said cause by the Supreme Court." It will be seen that the conditions of the bond substantially conform to the act of assembly. The plaintiff in error can derive no aid from the case put by way of illustration. It is asked, with much emphasis, if we are prepared to hold the securities liable, when the judgment of the Court below is reversed, and the proper judgment rendered here? We answer that such is the law of our land; and that the act of assembly noticed above, will admit of no other construction; nor can there be much hardship in requiring the party who resorts to a reversing tribunal for the correction of supposed error, to give security to perform the judgment when reversed and corrected; there can be no hardship in securing to the plaintiff what may be justly due him. This is in strict analogy with the case of securities in a bond for a writ of error *coram vobis* under our statute. When a defendant wishes to have any clerical misprision corrected, he can do so by this writ, on giving bond and security to satisfy the judgment that may be rendered, and this his securities are bound to do, whether he succeeds in procuring a correction of the judgment or not. Although the question of liability of securities has never before been presented in this aspect, we are now well satisfied, that when a judgment is reversed and the proper judgment rendered against the plaintiff in error, his securites are not discharged, but held liable for the payment of such judgment.

The next objection is, that the *scire facias* does not correspond with the record on which it purports to be founded, that it calls for twenty dollars costs in the Circuit Court on the affirmance of the judgment in that Court, on the writ of error from the County Court. The judgment had been originally rendered in the County Court, and was taken to the Circuit Court, where it was affirmed with costs; the record did not shew to what the costs amounted; nor indeed could it well do so, as it remained to be taxed by the Clerk. It was a matter to be proved on the trial of the *scire facias*. The amount is alledged to be twenty dollars, and there can be no doubt but the allegation is supported by the fee bill.

The objection that interest was allowed on the damages given in the Supreme Court, is not fairly presented; it

should have been the ground of an application to the Court below; but if it were, we do not believe there is any error in it. Interest is given by our statute on all judgments from their rendition till paid; the fifteen per cent allowed on the affirmance in the Circuit Court, and the ten per cent in the Supreme Court, become embodied with the principal in the judgment, and interest ran on the aggregate amount till payment.

All the other material points arise out of the charges asked and refused by the Court, and those given and objected to; they are presented to us in the bill of exceptions signed by the presiding judge. Two receipts were produced, one for five hundred dollars and the other for three hundred dollars, signed by Sanders, who was proven at that time to have been the deputy sheriff, and to have had the *fieri facias* against Otey in his possession. The first receipt expressed on its face to be in currency, and the second in Tennessee money, both were signed by Sanders with the addition of D. S. to his name. On the back of both receipts was an indorsement in the following words: "the private and individual understanding was between me and Captain Otey, that the within receipt was to be applied to an execution which F. E. Rives obtained against said Otey, when the judgment was affirmed in the Supreme Court," signed, "William Sanders." These receipts were offered by Fenwick, one of the defendants below, as evidence of so much money paid by his principal, and for which he claimed a credit; they were objected to, and the objection was sustained by the Court. It has been argued by the counsel for the plaintiff in error, that these receipts were improperly rejected by the Court, that they ought to have been permitted to go to the jury, and that the indorsement ought not to be allowed to repel the evidence on their face, of the money having been paid absolutely and unconditionally as a part of the execution. The counsel contend that the indorsement on the receipts contains intrinsic evidence of having been made at a different time, and without the privity and consent of Otey. If we were to put the indorsement on the receipts entirely out of view, it would then only be by inference, after connecting the fact of Sanders being the deputy sheriff, and his holding the *fieri facias* at that time, that we could arrive at the conclusion that the money paid to him was in part payment of Rives' execution against Otey. The receipts of themselves would not prove on what account the money

JULY 1830.

Sanders and
Fenwick
v
Rives.

had been paid to him; they are only evidence of so much money having been paid, without directing the manner in which it was to be applied. But there can be no doubt that the indorsement truly expresses the object and the terms on which it was received. The fact of these receipts being in the possession of Otey, and offered by his security as evidence, repudiates the suggestion that it was an after thought of Sanders, without the consent or concurrence of Otey. No other reasonable conclusion can be drawn, but that the indorsement was either made at the time the receipts were given, or that by the consent of Otey it was subsequently made as an expression of the mutual understanding of the parties when the money was paid. If such then were the terms on which the payments were made, to abide a future event, they could not be a satisfaction in part of the execution; and they were very properly excluded from the jury, as their admission could only have tended to embarrass them. It was a matter of arrangement between Otey and Sanders, by which the latter undertook, on the happening of a certain event, to apply the money for Otey's benefit. The money so paid could not have been collected by the plaintiff in execution from Sanders' principal, and therefore Otey was not entitled to a credit on the execution. If it had been an absolute payment, the execution would have been extinguished for so much, and that amount never could again have been collected from the defendant.

Two other receipts were given by Sanders, which were offered in evidence, one for $500 and the other for $1000 signed by him as deputy sheriff. There can be no doubt that those two payments were intended to be applied to the same execution, as it does not appear that the deputy sheriff ever had but the one. These receipts were read to the jury, there was some evidence that the money paid by Otey to Sanders on the execution, was, by an agreement between them, to remain in his hands, and abide the event of the writ of error in the Supreme Court, and it was in proof by the evidence of Mead, the clerk of the Court, that on his making some objection to the sufficiency of the security offered on taking out the writ of error, Sanders said that he as deputy sheriff, had received on the execution, between $2300 and $2500 in currency, in part payment thereof. After this evidence, the Court, at the request of the plaintiffs below, charged the jury in substance, that if any payment had been made by Otey to Sanders

JULY 1830.

Sanders and
Fenwick
v.
Rives.

as deputy sheriff while he held the execution, and if the money so paid was still in Sander's hands at the taking of the writ of error and giving bond to supersede the execution, he the sheriff thenceforward held it as the trustee of the person paying it, and was not bound, nor could he be compelled to pay it to the plaintiff in execution; and that a payment made under such circumstances, should not be regarded by the jury. The consequence to the defendants below resulting from this charge, was to deprive them of the benefits of the two receipts which had been read to the jury, amounting to fifteen hundred dollars. If this money had been paid on the same terms as that for which the first two receipts had been given, and the jury had been charged that if they so found it, they should not regard it as a payment on the execution, it would not have been erroneous. But this was not the footing it was put on by the judge's charge; it went on the ground, that the writ of error bond not only superseded all that remained to be done towards satisfying the judgment and execution, but that it likewise undid all that had been done towards obtaining satisfaction, and that it was the duty of the sheriff to pay back all the money he had collected previous to the supersedeas. The correctness of this doctrine has been attempted to be sustained with much ability by the counsel for the defendant in error; but his argument, however ingenious, we do not consider sound; the moment the money was paid to the sheriff, it was his duty to pay it over to the plaintiff in execution, and from the time of the receipt of the money till it was paid, he was the debtor of the plaintiff, and could have been compelled to pay it over to him on motion to the Court. It could not in any way be affected by the subsequent writ of error bond. The execution had, *pro tanto*, performed its function, and its further progress alone could be arrested by the supersedeas. If there had been a levy made and property sold under the execution, the writ of error bond subsequently entered into could not destroy the validity of the sale, or affect the title of the purchaser; if the judgment should afterwards be reversed, the defendant in the execution would be remitted to the plaintiff for satisfaction, and not to the sheriff. The case under consideration is not analogous to an arrest of the body of the defendant on a *ca .sa.* in satisfaction of a judgment. Should the defendant, after his arrest, sue out a writ of error and give bond, the *ca. sa.* would be wholly superseded, because it had in no part performed

its function at the time it was so superseded; the arrest was no part of satisfaction, and by giving bond for a writ of error, the defendant substitutes a new security for the payment of the judgment in lieu of his body. The securities for the writ of error are not bound for more than the plaintiff has been prevented from collecting by the interposition of the supersedeas, they are not accountable for the honest application of any money the sheriff may have received on the execution, before the date of the supersedeas. In this case, if the fifteen hundred dollars had been paid by Otey to the deputy in part satisfaction of the execution, the credit should have been allowed, and Rives left to look to the sheriff for the amount. The effect of the charge we conceive was to deny this credit. The judgment must therefore be reversed and the cause remanded.